IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

SHERMAN MACK,                                )
                                             )
            Plaintiff                        )        1:21-CV-00004-RAL
                                             )
    vs.                                      )        RICHARD A. LANZILLO
                                             )        UNITED STATES MAGISTRATE JUDGE
SUPERINTENDENT CLARK; DEPUTY                 )
ADAMS; DEPUTY ENNIS; JOHN DOE 1,             )        MEMORANDUM OPINION ON
PRC BOARD MEMBER AT SCI ALBION;              )        DEFENDANTS' MOTION TO DISMISS
JOHN DOE 2, PRC BOARD MEMBER AT              )        FOR FAILURE TO STATE A CLAIM
SCI ALBION; JOHN DOE 3, PRC BOARD            )
MEMBER AT SCI ALBION; JOHN DOE               )
4, PRC BOARD MEMBER AT SCI                   )
ALBION; JOHN WETZEL; CAPTAIN                 )        ECF NO. 36
SISSEM; LIEUTENANT FLOYD,                    )
                                             )
            Defendants                       )
                                             )

MEMORANDUM OPINION

I.      Introduction

        Plaintiff Sherman Mack (Mack), a prisoner in the custody of the Pennsylvania

Department of Corrections (DOC), filed this *pro se* action against John E. Wetzel, the former

Secretary of the DOC, and nine DOC employees who work at the State Correctional Institution

at Albion (SCI-Albion).  He asserts that the Defendants violated his rights guaranteed under the

First, Eighth, and Fourteenth Amendments to the United States Constitution and seeks redress of

those violations pursuant to 42 U.S.C. § 1983.[1]

        The Defendants moved to dismiss Mack's complaint pursuant to Federal Rule of Civil

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties have consented to
the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this action as authorized by 28
U.S.C. § 636.  ECF Nos. 2, 16, 43.

Procedure 12(b)(6).  ECF No. 21.  Mack filed a motion to amend his complaint, which the Court

granted.  Upon the docketing of Mack's amended complaint, the Court denied the Defendants'

motion to dismiss as moot.  ECF Nos. 27, 28, 30.  The Defendants then moved to dismiss

Mack's amended complaint for failure to state a claim.  ECF No. 36.  The Court ordered Mack to

respond, ECF No. 38, and granted his numerous requests for extension of time to do so.  ECF

Nos. 40, 42, 45.  After his latest extended response deadline passed, the Court issued an order

directing Mack to show cause for his failure to respond or, alternatively, to file a response by

June 29, 2022.  ECF No. 52.  Thereafter, counsel entered his appearance on Mack's behalf and

filed a brief in opposition to Defendants' motion.  ECF No. 54.  The motion is ready for decision.

II.        Allegations of the Amended Complaint[2]

Mack claims that the Defendants conspired (1) to classify him in a manner that resulted

in his solitary confinement under highly restrictive conditions and with no opportunity to

challenge this classification, and (2) to deny him access to his prison account funds.  Mack

asserts that the Defendants took both actions in violation of his due process rights under the

Fourteenth Amendment and in retaliation for his engaging in constitutionally protected activity

in violation of his First Amendment rights.  He also challenges the conditions of his confinement

---

[2] Mack's amended complaint asserts claims against each Defendant in both his individual and official capacities.
ECF No. 29, ¶ 17.  When a defendant is sued in his "official capacity," claims for monetary relief are barred by the
Eleventh Amendment, which proscribes actions in the federal courts against states, their agencies, and state officials
acting within their official capacities.  *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt.
Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651
(1974) (state employees acting in their official capacity).  Because the Defendants are employees of the DOC, which
administers Pennsylvania state prisons as an agency of the Commonwealth of Pennsylvania, they are entitled to
Eleventh Amendment immunity.  *See Brown v. Smith*, 2019 WL 2411749 (W.D. Pa. June 7, 2019).  Accordingly,
Mack's claims for monetary relief against the Defendants in their official capacities will be dismissed with
prejudice.  To the extent the amended complaint asserts claims against the Defendants in their official capacities for
injunctive or declaratory relief, these claims are not subject to Eleventh Amendment immunity and may proceed,
provided they are properly supported by factual allegations and applicable law.  *See Kentucky v. Graham*, 473 U.S.
159, 169 n.18 (1985); *Laskaris*, 661 F.2d at 26.

under the Eighth Amendment.

The Court accepts the following factual allegations in Mack's amended complaint as true for purposes of Defendants' motion to dismiss. *See US Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Mack was under investigation by members of the Security Department at SCI-Albion based on allegations or suspicion that he was smuggling drugs into the prison. ECF No. 29, ¶ 18. On November 13, 2018, unnamed officers moved Mack from his cell in general population to one in the Restricted Housing Unit (RHU). *Id.*

On January 28, 2019, Defendant Lieutenant Floyd interviewed Mack. *Id.*, ¶¶ 12, 19. "Mack invoked his Fifth Amendment right against self-incrimination," and "[a]s a result, Defendant Floyd threatened Mack with a misconduct report and the confiscation of funds in his prison account." *Id.*, ¶ 19. Mack alleges no other facts concerning the conduct of the interview.

Thirty-three days later, Mack tried to buy "legal materials" from the law library. *Id.*, ¶ 20. He was unable to do so, however, because he "was denied access to the funds in his prison account." *Id.* He does not identify the individual or individuals who allegedly denied him use of his prison account funds or "froze" his account. Later that same day, Mack sent Defendant Superintendent Clark a request slip about his issue with his prison account. *Id.*, ¶ 21; 29-1, p. 1. On March 29, 2019, Mack filed a grievance through SCI-Albion's administrative grievance system. *Id.*, ¶ 22; 29-1, pp. 2-3. He "challeng[ed] the penological justification of denying him access to the funds in his prison account without notice, the opportunity to be heard, or the right to appeal said denial of the funds in his account." *Id.*

Mack alleges that Defendants Clark, Floyd, and Sissem conspired, with a retaliatory motive, "to deny him his Due Process rights attached to the funds in his account." *Id.*, ¶¶ 24, 26.

Sissem denied his grievance at initial review. *Id.*, ¶ 25. Sissem "lied" by "falsely stating" that Mack's "account [was] not frozen." *Id.*, ¶ 25; 29-1, p. 4.

Later, on or about April 2, 2019, Mack spoke with members of SCI-Albion's Program Review Committee (PRC)—Defendants Adams, Ennis, and John Does One, Two, Three, and Four. *Id.*, ¶ 27. Mack explained his belief that Clark, Floyd, and Sissem were conspiring "to retaliate against him for invoking his Fifth Amendment right against self-incrimination." Ennis then said, "[y]eah, I saw your little grievance about that. We have a place for people like you." *Id.*, ¶ 28. Mack asked what he meant by "people like me? Black people?" *Id.*, ¶ 29. Adams replied, "[n]o, Mr. Mack, not Black people. People who refuse to cooperate with security, who then file frivolous grievances and lawsuits." *Id.*, ¶ 30. John Doe Three then asked Mack, "[d]o you know what RRL is, Mr. Mack?" "No, what's that?" *Id.*, ¶ 31. John Doe One then explained that the PRC was adding Mack to the RRL. *Id.*, ¶ 32. John Doe Four explained that this meant indefinite solitary confinement. *Id.*, ¶ 33. Mack then asked Adams, Ennis, and all four John Doe Defendants "if it was legal to place him on RRL in retaliation for his filing of grievances and lawsuits, to which Defendant Ennis replied, 'We've put people on RRL for less.'" *Id.*, ¶ 34. Mack also claims, without supporting factual allegations, that these Defendants conspired with Clark, Floyd, and Sissem to place him on the RRL. *Id.*, ¶ 35.

On April 9, 2019, unspecified individuals transferred Mack to SCI-Forest. *Id.*, ¶ 38. Two days later, SCI-Forest's PRC members told him that SCI-Albion's PRC had placed him on RRL and that. as a result, he "will be housed in indefinite solitary confinement for an indeterminate period of time, without the opportunity to participate in any educational, vocational, recreational, psychological and/or behavioral programming and services whatsoever." *Id.*, ¶ 38.

4

The RRL has established criteria for assignment which Mack alleges he does not meet. *Id.*, ¶ 36.  No one provided Mack with written notice of his RRL placement, an in-person hearing, any opportunity to be heard, or a chance to appeal.  *Id.*, ¶ 37.  Mack has had no "meaningful review of his RRL placement."  *Id.*  Mack claims that all Defendants conspired to deny him any meaningful, individualized review of his RRL placement.  *Id.*, ¶ 53.  Mack grieved his RRL placement through SCI-Forest's administrative grievance system.  *Id.*, ¶ 39.  He also grieved this placement through SCI-Albion's system.  *Id.*, ¶ 40.  *See also* ECF No. 29-1, pp. 13-21.

"Defendant Wetzel has created policies, practices and customs that have left [Mack] on indefinite solitary confinement without any way to appeal…" or "any meaningful, individualized review of his RRL status."  *Id.*, ¶¶ 46, 47.  While Mack was on the RRL, Wetzel "ignored any and all of [his] requests for review and relief of his retaliatory RRL placement" and "ignored all of his requests for any type of educational, vocational, recreational, behavioral or psychological programs and services." [3]  *Id.*, ¶¶ 54, 55.  Mack alleges that living in solitary confinement "has caused [him] psychological and emotional stress and anxiety, which has caused him to lose sleep and weight, and is affecting his ability to communicate and interact with other people."  *Id.*, ¶ 49. "[E]ach Defendant" is alleged to have ignored Mack's unspecified "pleas for help with his psychological and emotional harm."  *Id.*, ¶ 50.

As relief, Mack seeks compensatory and punitive damages, costs, a declaration that his rights have been violated, and injunctive relief in the form of removal from the RRL and a prohibition on future retaliatory conduct.  *Id.*, ¶¶ 57–63.

---

[3] Mack does not identify any specific request he made or when or how it was made.

Review of court dockets reveals that a nine-count criminal complaint was filed against Mack in a Pennsylvania Magisterial District Court on June 6, 2019.  He was charged with violating a state law that prohibits furnishing (in multiple ways) any controlled substance to any convict in a prison, conspiracy to commit bribery, and other crimes.  After initial proceedings, the magisterial district judge transferred his case to the Commonwealth of Pennsylvania's Erie County Court of Common Pleas.  His case is active and scheduled for trial.[4]

III.     Standard of Review

Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of Mack's amended complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

---

[4] Mack's relevant criminal case numbers are at MJ-06308-CR-0000182-2019 and CP-25-CR-0002118-2019. Unified Judicial System of Pennsylvania Web Portal, available at https://ujsportal.pacourts.us/CaseSearch (last accessed June 27, 2022).  A district court may take judicial notice of state court records, as well as its own.  *See Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, a district court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to

a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). While a district court may not generally consider matters extraneous to pleadings in this posture, it may consider documents integral to or explicitly relied upon in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

While the foregoing principles apply to all complaints in federal court, *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read the factual allegations of a *pro se* complaint to state a valid claim on which the litigant could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). These principles still apply because, even though counsel currently represents Mack, he filed his operative, amended complaint while *pro se*.[5] *See Makeen v. Comcast of Colorado X, LLC*, 2010 WL 11556753, at

---

[5] In addition, Mack's claims are subject to the district court's screening obligation under the Prison Litigation Reform Act because he is a prisoner seeking redress "from a governmental entity or officer or employee of a governmental entity…." 28 U.S.C. § 1915A. The court "shall…dismiss the complaint, or any portion of the complaint, if the complaint…is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(2). In performing section 1915 screening, a court uses the same standard that applies to Rule 12(b)(6) motions. *Banks*, 568 F. Supp. 2d at 588. This screening obligation "is not excused even after defendants have filed a motion to dismiss," *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008), and the court must dismiss the complaint if it fails to state a claim even "based upon grounds not raised by the defendants in their motion to dismiss." *Dare v. United States*, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), *aff'd*, 264 Fed. Appx. 183 (3d Cir. 2008) (citations omitted).

*3 (D. Colo. June 1, 2010), *report and recommendation adopted*, 2010 WL 11556789 (D. Colo. Sept. 21, 2010).

Finally, the Court notes that Mack's brief in opposition to Defendants' motion cites allegations from his original complaint *and* his amended complaint. ECF No. 54 (passim). But "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1476 (3d ed. 2019)). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* (citation omitted). *See also Ramirez v. Collier*, 142 S.Ct. 1264, 1275-76 (2022). Hence, the Court's review on this Rule 12(b)(6) motion is limited to allegations in the amended complaint.

IV.     Discussion

A.     Personal Involvement Necessary to Support § 1983 Claims

Defendants argue that the claims against several of the Defendants, including supervisory personnel such as Secretary Wetzel and Superintendent Clark and those Defendants involved in the grievance process, should be dismissed because the amended complaint does not support their personal involvement in actionable conduct. ECF No. 37, p. 6. This argument is based on the principle that a defendant in an action pursuant to 42 U.S.C. § 1983 "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations removed)). It is the plaintiff's burden to allege facts to "show that each and every defendant was

'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

Moreover, the mere fact that defendants were "supervisors" or had supervisory authority, standing alone, cannot support liability under § 1983. *Hepler v. Wetzel*, 2019 WL 1923004, at *5 (W.D. Pa. Apr. 30, 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989)). This is because "[l]iability may not be imposed under § 1983 on the traditional standards of *respondeat superior*." *Id.* "In a § 1983 suit…[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Iqbal*, 556 U.S. at 677.

Upon a proper factual showing, however, "[t]wo theories of supervisory liability" are available under § 1983. *See Ivy v. Wetzal*, 2021 WL 4479721, at *5 (W.D. Pa. Sept. 30, 2021) (quoting *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *Santiago*, 629 F.3d at 129 n.5). Under the other theory, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago*, 629 F.3d at 129 n.5 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v.*

*Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).

Furthermore, an individual's participation in the grievance process cannot support personal involvement for purposes of § 1983.  *See Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.").  Information learned through "the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013).  *See also Stuart v. Lisiak*, 645 Fed. Appx. 197, 200 (3d Cir. 2016) (holding that a prison nurse lacked personal involvement when she declined to intervene in an inmate's treatment, despite receiving the inmate's grievance claiming that the treatment was deficient).  Courts have routinely dismissed civil rights claims under § 1983 against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process. *See, e.g.*, *Hoopsick v. Oberlander*, 2020 WL 5798044, at *2 (W.D. Pa. Sept. 29, 2020) (defendant upholding denial of plaintiff's grievance); *Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (senior prison officials' participation in administrative appeal process); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (no personal involvement "[i]f a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred.").  Moreover, an inmate may not bring an independent claim for obstruction of the grievance process because it is well settled that "a prisoner has no constitutional right to a grievance procedure." *Rivera v. Pa. Dep't of Corr.*, 346 Fed. Appx. 749, 751 (3d Cir. 2009).  If Mack bases his claims against any Defendant upon his review of, or decision concerning, a grievance, his allegations fail to support the personal involvement of that Defendant.

11

Because issues relating to the personal involvement of each Defendant are intertwined with the merits of Mack's claims, the Court will consider the former issues in the context of evaluating the legal sufficiency of each of Mack's claims.

B.    Conspiracy

The Court will dismiss Mack's civil conspiracy claims based upon the allegations' conclusory nature. "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1983), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). A plaintiff must plead an actual agreement among the parties to the alleged conspiracy. *See Watson v. Sec'y Pa. Dep't of Corr.*, 436 Fed. Appx. 131, 137 (3d Cir. 2011) (per curiam). "Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss." *Rogers v. Mount Union Borough ex rel. Zook*, 816 F. Supp. 308, 314 (M.D. Pa. 1993). "As 'the linchpin for conspiracy is agreement,' concerted action, without more, cannot suffice to state a conspiracy claim." *Watson*, 436 Fed. Appx. at 137. "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003); *see also Brown v. Camp Hill*, 2015 WL 5675575, at *5 (M.D. Pa. Sept. 25, 2015) ("A conspiracy claim requires more than mere speculation as to an agreement. Plaintiff must provide specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct.") (internal quotation marks omitted); *Tang v. State of R.I., Dep't of Elderly Affairs*, 904 F. Supp. 55, 62 (D.R.I. 1995) ("[A]llegations of conspiracy [must]

12

be supported by material facts, not merely conclusory statements.").

Here, Mack has failed to allege any particularized facts from which the Court may reasonably infer "a mutual understanding among the [alleged] conspirators to take action directed toward an unconstitutional end." *Grigsby*, 250 F. Supp. 2d at 458.

Mack alleges a grand conspiracy involving all ten Defendants to deny him access to his prison account's funds and to place him on indefinite RRL status with no means to challenge that placement, both without due process and in retaliation for constitutionally protected activity. ECF No. 29, ¶¶ 24, 26, 35, 37, 53. These assertions are legally insufficient to support a conspiracy claim because they are mere conclusions unsupported by factual allegations. *Grigsby*, 250 F. Supp. 2d at 458. They are also bald allegations against a broad group of Defendants with no delineation of individual conduct and, thus, do not support the personal involvement of any Defendant. *See Van Tassel*, 608 Fed. Appx. at 69-70. Therefore, Mack's conspiracy claims will be dismissed, without prejudice.

C.     The Department of Corrections' Restricted Release List

Mack asserts that the Defendants have violated his due process rights by (1) initially placing him on the RRL, and (2) by continuing him on RRL status indefinitely and without any meaningful or individualized opportunity to challenge this status.

To trigger protections under the Due Process Clause of the Fourteenth Amendment, a state actor must deprive the plaintiff of either a property right or liberty interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Depriving already-incarcerated persons of liberty requires due process protections only if the deprivation imposes an "atypical and significant hardship…in relation to the ordinary incidents of prison life." *Sandin v. Conner*,

515 U.S. 472, 484 (1995).  Any lesser restraints on a prisoner's freedom fall "within the expected perimeters of the sentence imposed by a court of law" and will not constitute a protected liberty interest.  *Id.*  The determination of what is "atypical and significant" depends on the range of conditions an inmate would reasonably expect to encounter while incarcerated.  *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3d Cir. 1999).  "In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 Fed. Appx. 64, 66 (3d Cir. 2013) (citing *Sandin*, 515 at 468; *Shoats v. Horn,* 213 F.3d 140, 144 (3d Cir. 2000)).  In *Sandin*, for example, the Court held that a thirty-day punitive segregation in the prison was not an atypical or significant hardship for an inmate and, therefore, did not implicate any liberty interest of the plaintiff; thus, the Due Process Clause's protections did not apply. *Sandin*, 487 U.S. at 487.  *See also Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months administrative segregation).

If an inmate has stated facts that trigger a protected liberty interest in his RRL status, then the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process," *Shoats*, 213 F.3d at 144, and has found that "the periodic reviews conducted by the PRC…comport with the minimum constitutional standards for due process." *Id.* at 147.  *See also Washington–El v. Beard*, 562 Fed. Appx. 61, 63-64 (3d Cir. 2014); *Bramble v. Wetzel*, 2022 WL 55021, at *6

(M.D. Pa. Jan. 5, 2022) (administrative custody and RRL confinement exceeding two years "implicates due process concerns," but granting summary judgment for defendants because a sufficient process was provided), *appeal docketed*, No. 22-1188 (3d Cir. Feb. 2, 2022).

Mack's due process claim based on his initial placement on RRL status fails as to all Defendants because "the initial decision to place [Mack] in RRL status does not, by itself, trigger the plaintiff's due process rights since that initial placement decision did not entail any atypical and significant hardships on [him] beyond the fact of confinement itself." *Bramble*, 2022 WL 55021, at *6 (citing *Smith*, 293 F.3d at 654; *Torres*, 292 F.3d at 151-52). Indeed, "an inmate does not have a right to be confined in any particular housing unit in a prison." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015). Thus, Mack's due process claim based on his initial placement on RRL status will be dismissed with prejudice.[6]

The Court now turns to Mack's claim that he has been denied due process because he has been held on the RRL without an opportunity to appeal or challenge his continued RRL status. Mack alleges that, pursuant to policies or practices adopted or ratified by Wetzel, he has been held continuously in solitary confinement on RRL status since he was transferred to SCI-Forest in April 2019. ECF No. 29, ¶ 38. The Court concludes that Mack's allegations minimally support an inference that Wetzel was personally involved in the conduct upon which Mack bases his claim, but are insufficient to support such an inference as to any other Defendant.

Mack's amended complaint does not expressly allege that Wetzel personally directed Mack's indefinite placement on the RRL or personally precluded his ability to dispute, appeal, or

---

[6] This claim against Defendants Clark, Floyd, and Sissem also fails because Mack's conclusory allegations that these Defendants conspired with SCI-Albion's PRC members to place him on the RRL do not support their personal involvement.

challenge that placement.  *See Rode*, 845 F.2d at 1207.  The amended complaint does allege facts

to support that Wetzel promulgated or ratified the policy underlying this placement and had

knowledge of Mack's indefinite placement on the RRL and the associated highly restrictive

conditions of his confinement.  Specifically, he alleges that Wetzel "ignored … all of [his]

requests for review and relief of his retaliatory RRL placement" and "ignored all of his requests

for any type of educational, vocational, recreational, behavioral or psychological programs and

services." *Id.*, ¶¶ 54, 55.  Although the amended complaint does not allege the substance of

these requests or specify the dates upon which Mack submitted them to Wetzel, based on Mack's

*pro se* status, the Court will infer from the amended complaint that the requests were timely and

adequately raised his objections to the lack of any opportunity to challenge his RRL status.  The

Court will also construe the allegations as placing Wetzel on notice of an alleged ongoing

violation of his due process rights rather than simply as an after-the-fact complaint about prior

conduct or treatment.

"Individual defendants who are policymakers may be liable under § 1983 if it is shown

that such defendants, 'with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *A.M.*,

372 F.3d at 586 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Customs are "practices of state officials ... so permanent and well settled as to virtually constitute

law." *Kniepp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting *Monell v. New York City

Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  In other words, a custom is "an act 'that has not

been formally approved by an appropriate decisionmaker' but that is so widespread as to have

the force of law." *Natale v. Camden Cty. Corr. Fac.*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).  Mack has plausibly

alleged that Wetzel maintained a policy, practice or custom that has "left [Mack] on indefinite

solitary confinement without any way to appeal" or "any meaningful, individualized review of

his RRL status." ECF No. 29, ¶¶ 46, 47. At the pleadings stage, it is unclear what more a *pro se*

prisoner could allege. As "the signature authority on DOC policies, and as a policymaker,"

Secretary Wetzel was plausibly "responsible for statewide establishment and implementation of

policies. As such, a factfinder could conclude that he personally endorsed" the alleged practice or

custom. *See Waldron v. Wetzel*, 2021 WL 5770222, at *9 (W.D. Pa. Dec. 6, 2021) (material

issues of fact on Secretary Wetzel's personal involvement in due process claim precluded

summary judgment).

While this due process claim against Wetzel survives dismissal, this claim against the

other Defendants does not. Mack has not alleged that any other Defendant had the authority to

provide Mack with a process to challenge or seek review of his RRL status. Indeed, Mack is

currently held at SCI-Forest and the amended complaint alleges no facts to support that the

members of SCI-Albion's PRC—Adams, Ennis, and John Does One, Two, Three, and Four—

had or have that authority to provide him with an avenue to challenge his RLL status. The

amended complaint similarly does not allege facts to support that Clark, Adams, Ennis, Sissem,

or Floyd—SCI-Albion's superintendent, deputy superintendents, one of its captains, and one of

its lieutenants respectively—has such authority over a prisoner incarcerated at SCI-Forest.[7] ECF

No. 29, ¶¶ 8–12.

---

[7] To the extent the amended complaint can be construed as asserting a due process claim because Mack "does not meet the established criteria for RRL placement," ECF No. 29, ¶ 36, such claim will be dismissed with prejudice. The DOC's policies and procedures do not create a liberty interest protected by the Due Process Clause. *See Lee v. Schrader*, 2014 WL 2112833, at *4 (W.D. Pa. May 20, 2014) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension") (citing *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (other citations omitted); *Sandin*, 515 U.S. 472.

As to the claim against Wetzel, the amended complaint also minimally supports an inference that Mack's continuation on the RLL with no ability to challenge this status implicates a liberty interest because the duration and conditions of his RLL confinement are significantly more restrictive and involve an atypical hardship sufficient relative to those imposed on other inmates in solitary confinement. *See Sandin*, 515 U.S. at 484; *Shoats*, 213 F.3d at 144; *Bramble*, 2022 WL 55021, at *6 (administrative custody and RRL confinement exceeding two years violates a liberty interest and thus "implicates due process concerns"). In reaching this conclusion, the Court accepts, at this stage, Mack's allegations that he has been in solitary confinement on the RRL since 2019, that his RRL status is indefinite, and that his RRL status has left him "without the opportunity to participate in any educational, vocational, recreational, psychological, and/or behavioral programming" and other services. ECF No. 29, ¶ 38.

Finally, the amended complaint alleges facts to support that Mack has not received the process he is due. When a liberty interest is implicated, inmates on RRL status are entitled to "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views." *Shoats*, 213 F.3d at 144. Whether SCI-Forest's PRC or another individual conducted "periodic reviews" that satisfy due process requires a developed factual record. Therefore, the motion to dismiss will be denied as to the due process claim against Wetzel based on the continuation of Mack on RRL status without opportunity for review or challenge.

D.      Mack's Prison Account

Mack alleges that the Defendants violated his Fourteenth Amendment rights when he was denied access to funds in his prison account while trying to buy legal materials from the law library. ECF No., ¶ 20. This claim will be dismissed for lack of personal involvement because Mack has not alleged which Defendant or Defendants, if any, denied him access to his money or

18

"froze his account." *See Baraka*, 481 F.3d at 210 (a defendant in a § 1983 action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Mack's broad assertions that multiple defendants bear responsibility for this treatment without identifying individual conduct are legally insufficient. *See Van Tassel*, 608 Fed. Appx. at 69-70.

E.      Eighth Amendment Conditions of Confinement

Mack also alleges that the conditions of his confinement while he was housed in the RHU on RRL status violated his rights under the Eighth Amendment. The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (citation and internal quotations omitted). Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care, and "take reasonable measure to guarantee the safety of the inmates." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). To state a claim for violating the Eighth Amendment, "a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference." *Tillman*, 221 F.3d at 418 (citations omitted); *Wilson v. Seiter*, 501 U.S. 294 (1991). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim," *see Hudson*, 503 U.S. at 9, although, "[s]ome conditions of confinement" insufficient on their own to establish a claim may violate the Constitution "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such

as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Mack's conditions of confinement claim based on his time at SCI-Albion will be dismissed. Several courts have held that mere placement in administrative custody does not violate the Eighth Amendment. *See, e.g.*, *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Mack's minimal allegations about the conditions in SCI-Albion's RHU do not support an Eighth Amendment violation. Indeed, where conditions are not "cruel and unusual" but merely "restrictive and even harsh," they are considered "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Courts have also required far longer periods of solitary confinement to support a conditions of confinement claim. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431 (3d Cir. 2020) (a reasonable jury could conclude that thirty-three years in solitary confinement posed a substantial risk of harm to inmate); *Noble v. Wetzel*, 2021 WL 6071490, at *3 (W.D. Pa. Dec. 23, 2021) (nearly twenty years of solitary confinement satisfied the objective Eighth Amendment standard).

F.    Retaliation

The amended complaint alleges two instances of retaliation: when officials allegedly denied Mack funds in his prison account because of his invocation of his right against self-incrimination, and when officials placed him on RRL status for filing "frivolous grievances and lawsuits." ECF No. 29, ¶¶ 35, 52. The Defendants argue that Mack's retaliation claims should be dismissed because his allegations fail to support any Defendants' personal involvement. ECF No. 37, p. 4. Each claim is analyzed below.

To state a retaliation claim, the plaintiff must allege facts to support that (1) he engaged

in protected activity; (2) officials took an adverse action against the plaintiff; and (3) "a causal link" exists "between the exercise of his constitutional rights and the adverse action taken against him." *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). This requirement is not too demanding: "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

The causation element of the retaliation claim is established only if the protected activity was a motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997). To support this last element, "a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations…." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citing *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998)). To show that retaliatory motive caused the adverse action, the plaintiff may rely on direct evidence or an inference of retaliatory motive arising from either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "'These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'"

21

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Mack's claim that unnamed officials denied him access to the funds in his prison account will be dismissed.  As the Court stated above in analyzing Mack's due process claim based on this same alleged denial, his allegations do not support the personal involvement of any Defendant.  *See supra*, p. 19 (citing *Rode*, 845 F.2d at 1207).  Although the amended complaint alleges that Floyd "threatened Mack with a misconduct report and the confiscation of funds in his prison account" after he "invoked his Fifth Amendment right against self-incrimination," ECF No. 29, ¶ 19, it does not allege that Floyd himself ever followed through with this threat.  An unexecuted threat to file a misconduct report is not an "adverse action" because it is not sufficiently severe to deter a reasonable person from pursuing his rights.  *See Burgos v. Canino*, 358 Fed. Appx. 302, 306 (3d Cir. 2009) ("threats alone do not constitute retaliation").  And Mack was not denied access to his funds for another thirty-three days after this conversation.  This is too long a time between the alleged protected activity and adverse action to infer retaliatory motive.  *See Lauren W.*, 480 F.3d at 267; *Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. Appx. 126, 134 (3d Cir. 2017) ("the temporal proximity contemplated to allow for such an inference is on the order of days or weeks").

Mack's claim that SCI-Albion's PRC placed him on RRL status also fails to support a retaliation claim.  Mack alleges that Adams told him that SCI-Albion's PRC had decided to place him on the RRL for filing "frivolous grievances and lawsuits."  ECF No. 29, ¶ 30.  At the pleading stage of the action, this allegation is sufficient to support an inference that Mack engaged in protected activity.  *See Mitchell*, 318 F.3d at 530.  And courts have held placement on RRL can meet the adverse action element because of its more restrictive conditions compared to

other aspects of prison life.  *See Jackson v. Carter*, 2017 WL 4326107, at *3 (W.D. Pa. July 10, 2017), *report and recommendation adopted sub nom. Jackson v. PA Dep't of Corr.*, 2017 WL 4296809 (W.D. Pa. Sept. 26, 2017).  But Mack has not pleaded facts to support directly or circumstantially a reasonable inference of retaliatory motive connecting his protected activity with his placement on RRL.  He has not identified any grievance or lawsuit that he asserts motivated his placement on RRL status nor any dates, sequence, or temporal proximity relative to his alleged protected conduct.  Without such factual allegations, the Court cannot draw a reasonable inference of causation.  *Lauren W.*, 480 F.3d at 267.  Mack's retaliation claims will be dismissed without prejudice.

> G.     Leave to Amend

When dismissing a *pro se* civil rights complaint in whole or in part, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  The Court should not allow amendment if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).  This instruction is equally applicable to *pro se* litigants and those represented by counsel.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  A detailed Order accompanies this Memorandum Opinion and provides specific instructions on which claims are dismissed with or without prejudice.  Within thirty days of the date of this Opinion and accompanying Order, Mack may file a second amended complaint to cure the deficiencies of the claims that the Court has dismissed without prejudice. If Mack fails to file a second amended complaint, those claims will be dismissed with prejudice without further action by the Defendants.

Given the nature of the errors in his *pro se* complaint, Mack is reminded that any

amended complaint must describe how each defendant violated his rights.  He must show personal involvement in the alleged wrongdoing by each Defendant.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  His pleading should explain to the Court what happened by specifically describing how each Defendant's acts or omissions caused the alleged violations. He should include dates or timeframes, when known.

An amended complaint "must be complete in all respects.  It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n.1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F. Supp. 1185, 1189 (M.D. Pa. 1992)).  In plain terms, this means that Mack should not simply submit the new facts or claims that he wishes to add to this litigation and request that they be added to his prior complaint.  Rather, he must draft a full and complete amended complaint containing both his prior facts and claims and those that he wishes to add. This means that an amended complaint must include claims that the Court has here said survived the motion to dismiss.  Failure to include those claims (and their supporting facts) means those claims would be treated as abandoned.

Mack must state any actual injury he has suffered.  Simply stating that the Defendants violated his civil rights is insufficient.  He must also describe for the Court the relief he is seeking in this lawsuit.

V.    Conclusion

Defendants' motion to dismiss will be GRANTED IN PART and DENIED IN PART. The motion will be DENIED as to Mack's due process claim against Defendant Wetzel based on the alleged indefinite continuation of Mack's placement on the RRL without review or

opportunity to challenge that status.  The motion will be GRANTED as to Mack's official

capacity claims for money damages and his due process claim based on his initial placement on

the RRL, and these claims will be dismissed with prejudice as to all Defendants.  The motion

also will be GRANTED as to all remaining claims of the amended complaint, but the dismissal

of those claims is without prejudice and with leave to amend within thirty days.

A separate order follows.

DATED this 11th day of July, 2022.


BY THE COURT:


RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE