THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

*Sherman Mack*

*Plaintiff*

*v.*

Superintendent Clark, Deputy Adams,
Deputy Ennis, Captain Floyd, Lt. Sissem,
John Doe 1, John Doe 2, John Doe 3,
John Doe 4, Secretary Wetzel, Sgt. Kemp,
Major Gill

Defendants

*Civil Action*

No. 1:21-CV- 0004
*Judge* Magistrate
Lanzillo

Plaintiff Mack's Second Amended Complaint

I. INTRODUCTION

Plaintiff Sherman Mack filed a complaint pursuant to 42 USC 1983 on Jan. 25, 2021. On August 31, 2021, after the Court granted Plaintiff Mack the right to file an amended complaint, Mack filed an Amended Complaint. Angus Love entered an appearance on June 27, 2022. Defendants filed a Motion to Dismiss on Jan. 19, 2022 and Plaintiff's counsel opposed said motion on June 27, 2022.  In its July 11, 2022 order the Court gave Plaintiff Mack 30 days to amend his complaint. This is said second amended complaint.

JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the First, Eighth and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction under 28 U.S.C. § 1331 over the Constitutional claims as well as those arising under 42 U.S.C. § 1983...

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in the State Correctional Institute at

Albion, Pa, [SCI Albion] and at the State Correctional Institute at Forest [SCI Forest] within the United States District Court for the Western District of Pennsylvania.

## PARTIES

4. Plaintiff Sherman Mack is incarcerated State Correctional Institute at Somerset, 1590 Walters Mill Rd. Somerset, Pa. 15510.

5. Defendant Superintendent Clark is the Superintendent at SCI Albion,[SCIA], 10750 Route 18, Albion, Pa. 16475.

6. Defendant Deputy Adams is the Deputy Superintendent at SCI Albion, 10750 Route 18, Albion, Pa. 16475.

7. Defendant Deputy Ennis is the Deputy Superintendent at SCI Albion, 10750 Route 18, and Albion, Pa. 16475.

8. Defendant Captain Floyd is a Captain SCI Albion, 10750 Route 18, Albion, Pa. 16475.

9. Defendant Lt. Sissem is a Lt. and in charge of security at SCI Albion, 10750 Route 18, Albion, Pa. 16475.

10. Defendant Secretary Wetzel is the Secretary of the Pennsylvania Department of Corrections.

11. Defendant John Doe 1 is an employee of SCI Albion, 10750 Route 18, Albion, Pa. 16475.

12. Defendant John Doe 2 is an employee of SCI Albion, 10750 Route 18, Albion, Pa. 16475.

13. Defendant John Doe 3 is an employee of SCI Albion, 10750 Route 18, Albion, Pa. 16475.

14. Defendant John Doe 4 is an employee of SCI Albion, 10750 Route 18, Albion, Pa. 16475.

15. Defendant Sgt. Kemp is and employee and in charge of inventory in the Restricted Housing Unit [RHU] at SCI Forest, 1 Woodland Drive, Marienville, Pa. 16239.

16. Defendant Major Gill is an employee and is in charge of the RHU at SCI Forest, 1 Woodland Drive, Marienville, Pa. 16239.

All defendants are sued in their individual and official capacities

Facts of the Case

17. Plaintiff Mack was incarcerated at the State Correctional Institute at Albion in 2017 after a promotional transfer for good behavior and had been write up free for 7 years. .

18. On Nov. 13, 2018 he was removed from general population and placed on administrative custody [AC] status.in the Restricted Housing Unit [RHU].

19. Shortly thereafter, Defendant Ennis came to the RHU and told Mack that he would be likely charged with a criminal offense for drugs and Mack responded that he would hire a lawyer and fight the case to which Ennis responded by saying " We'll see", which Mack construed as a threat.

20.  On Jan. 28. 2019 while in the RHU, Mack was interrogated by Defendant Captain Floyd concerning an investigation by the security office and threatened with a misconduct if he didn't cooperate.

21.  Later that day Mack was given a misconduct on Jan. 28, 2019 pursuant to DC-141 for attempted possession of contraband and unauthorized use of telephone, kiosk or mail and a violation of Pa. Crimes Code

22. At the misconduct hearing on Jan. 30, 2019, Mack maintained his silence as he didn't want to delay a pending transfer and was found guilty by the hearing examiner and sentenced to 120 days of disciplinary confinement with credit for time served since Nov. 13, 2018.

23. During the hearing, there was no mention of his prison account.

24. In early February, Mack received his monthly account statement for January and it said his account was put in escrow on Jan. 2nd by the security office which is run by Defendant Captain Sissem.

25. On March 2nd, Mack tried to access funds in his prison account to purchase legal materials from the law library, send money home to his sick grandmother and purchase hygiene products but was told his funds were not available.

26. Later that day, Mack filed an Inmate Request to Staff Member [IRSM] and addressed to Defendant Superintendent Clarke asking about his prison account being frozen without any opportunity to contest the action. .

27. B. Fuchbargh responded to the IRSM on March 8th saying that no money has been taken from his account and he doesn't know what he is talking about.

28. On March 29, 2018, Mack submitted grievance # 794210 asking why his inmate account had been frozen without any notice or opportunity to contest.

29. Mack received a response to the grievance on April 22, 2019 from Defendant Captain Sisson who lied when he said Captain Floyd is not harassing him and stating that his account is not frozen and he is free to access it.

30. On May 8, 2019, Mack appealed the grievance denial to Superintendent Clarke but received a Remanded Initial Review Response from C.O.Meure who said that his inmate account was being placed in escrow, monitored due to an ongoing criminal investigation and that no purchases have been denied.

31.  Mack again appealed to Superintendent Clarke on June 30, 2019.

32. Clarke responded on July 25, 2019 that he has reviewed the record and concluded that the grievance was properly denied as Capt. Floyd was not harassing him or freezing his account and had told him he was under a criminal investigation.

33. Mack appealed the denial to the final stage of the grievance system, to the Secretary's Office on August 8, 2019.

34. Mack had been absent from the facility due to a court appearance when the response was issued and his appeal was denied as untimely.

35. Mack asked for reconsideration on Oct. 5, 2019 due to his absence from SCIA for a court appearance.

36. Mack received a response from Keri Moore, Chief Grievance Coordinator for the Pa. DOC denying the Grievance and acknowledging that his account was frozen from Feb. 11, 2019 to April 29, 2019 due to an

investigation but he allegedly suffered no ill effects of the freezing of the account.

37. During a walk thru of the RHU on approximately April 2, 2019, Mack spoke with Defendants Ennis and Adams and John Does 1-4 and alleged that Defendants Clarke, Sisson and Floyd were conspiring against him for his refusal to assist in the investigation.

38. Defendant Ennis responded and said "Yeah, I saw your little grievance about that. We have a place for people like you"

39. Mack asked John Doe #2 what that meant and was he referring to black people and Doe said "ask him what it means".

40. Defendant Adams then said "No Mack, not black people. People who refuse to cooperate with security, who then file frivolous grievances and lawsuits".

41. Defendant Doe #3 then said "Do you know what RRL [Restricted Release List] is Mr. Mack?"

42. Mack said he didn't know and asked "what is it"?

43. Doe #1 told Mack that the PRC was in the process of putting him on the RRL.

44. Doe #4 then explained that the RRL was the Restricted Release List and meant, in effect, indefinite solitary confinement, and lose of privileges for programming, educational, recreational opportunities and services.

45. Mack continued to question them about the RRL and Defendant Ennis said "we put people on RRL for less".

46. The Restricted Release List ("RRL") is a list of DOC prisoners who are subjected to indefinite, and sometimes permanent, solitary confinement.

47. People on the RRL are not removed from the RRL until and unless the DOC Secretary, Defendant Wetzel, authorizes their removal

48. Like those serving disciplinary sentences, incarcerated people on the RRL are housed apart from the general prison population in RHU housing units in the conditions described above.

49. RRL inmates are the most secure classification in the Pa. DOC and more restrictive than RHU as they spent 23 hours per day in cell, one hour recreation alone in a cage, not access to religious services, educational programming, no phone calls or visits.

50. The DOC created the RRL in or around 2003 or 2004.

51. According to DOC policy, criteria for placing someone on the RRL include, among others, assaultive history against staff or inmates, sexual abuse history, escape or escape attempt history, and "threat to the orderly operation of a facility"; however, the criteria listed in the policy are not exclusive, and people can be placed on the RRL for reasons not listed in the policy as well.

52. No hearing is provided to a prisoner prior to being placed on the RRL.

53. A prisoner is not provided with the reasons they were placed on the RRL.

54. The ultimate decision maker regarding a prisoner's placement on or removal from the RRL is the Secretary of the DOC Defendant John Wetzel.

55. The Secretary's RRL placement decision is not appealable or subject to review except a cursory annual review.

56. The annual review process involves the circulation of a "vote sheet" among selected DOC staff members to provide input on whether the RRL prisoner being reviewed should remain on or be removed from the RRL.

57. These staff members include, among others, officials at the Mack's institution, including Superintendent Clarke, the Deputy Superintendent for Centralized Services Adams, and the Corrections Classification Deputy Ennis and a Program Manager.

58. The standards and considerations to be used by DOC staff members in providing this input are unknown to individuals on the RRL.

59. Individuals on the RRL have no opportunity to provide input during the annual review process.

60. Individuals on the RRL are not informed about what they need to do in order to be released from the RRL and re-enter general population.

61. There are no known or identifiable criteria individuals can fulfill in order to be removed from the RRL.

62. Regardless of the input given by DOC staff members through the "vote sheet" process, the final decision on an individual's removal from the RRL is made by Defendant Wetzel Secretary.

63. There is no opportunity for a prisoner to assert a meaningful challenge to the Secretary's decision to keep them on the RRL, either before or after that decision is made, and the prisoner is not provided with a hearing regarding his continued RRL placement.

64. There is no process by which a prisoner can appeal or obtain review of the Secretary's decision to keep him or her on the RRL

65. Although a prisoner on the RRL has an opportunity to participate in Program Review Committee ("PRC") reviews in accordance with DOC policy, these reviews do not provide a forum for addressing a prisoner's continued placement on RRL or return to general population.

66. Mack when his DC time expired in March 2019 he was moved to AC status which required PRC involvement.

67. The PRC at Albion consisted of Defendant Deputy Ennis, Defendant Deputy Adams and 2 other people.

68. During a PRC meeting, Mack was told that they had no authority to remove him from RRL and talked only about commissary, and property issues.

69. Defendant Ennis told him they were considering his RRL placement.

70. Unlike disciplinary confinement, there is no maximum length of time a prisoner can remain in solitary confinement on the RRL, no mention of the reasons for the placement and there is no process for a prisoner to receive a reduction in their time in solitary confinement and be released to general population sooner.

71. As of 2021, approximately 120–130 individuals are on the RRL.

72. Mack was transferred to SCI Forest on April 9, 2019 after his DC time expired.

73. Mack shipped a trunk and his TV to Forest as the rules allow and paid $125.00 to ship an additional 5 boxes of legal materials.

74. Upon arrival, he was placed in the RHU and told that SCI Albion Program Review Committee [PRC] had placed him on RRL.

75. On June 6, 2019, Mack filed grievance #808085 protesting the placement on the RRL.

76. The grievance was directed to SCI Albion as they had made the decision to place him on RRL.

77. SCI Albion did not respond to the grievance so he appealed to the Superintendent Oberlander of Forest who rejected it on August 27, 2019 stating that Albion made the decision and nothing has happened at Forest to change the decision,.

78. Mack continued to have trouble accessing his account when the librarian told him his account was not accessible as he sought funds for legal materials and was denied.

79. On April 24, 2019, Mack filed an IRSM to Major Blicha regarding his account and was told the account had been frozen for no apparent reason and that it would be unfrozen as of April 29, 2019.

80. The account was unfrozen on April 29th 2019.

81. Mack then filed Grievance #823168 to SCI Albion protesting his placement on the RRL on Sept. 5, 2019.

82. On Sept. 19, 2019, Albion rejected the grievance

83. He appealed the rejection and wrote a letter to Secretary Wetzel.

84. The Wetzel letter was answered by Rich Kustenbauder who denied the request and explained the criteria for RRL placement.

85. An appeal to the central office was rejected on Dec. 7, 2019.

86. Appeals to Grievance #805085 at Albion were also rejected.

87. Plaintiff Mack continues to insist that he doesn't not fit the criteria for RRL and has not had a meaningful opportunity to contest the placement which remains as indefinite RHU confinement at the time of filing his action.

88. Mack did not receive the 5 boxes, [see IRSM 8/25/10] and did not receive any of his personnel property for over 4 months after arriving at SCI Forest.

89. Mack did not receive an inventory of his property as rules require and did not receive any confiscation slips for property that was seized.

90. He filed a grievance [# 804941, 5/29/19] claiming property loss due to retaliation, and IRSM [4/23/19] to rectify the situation but all were rejected.

91. Mack was told that certain legal materials from his criminal case were not sent by SCI Albion as continued retaliation against him.

92. Mack filed additional grievances [No. 823961, 823097, and 820271] but got no relief.

93. Defendant Major Kemp refused to bring needed legal materials to Mack that he needed when he was going to court in Erie.

94. Defendant Sgt. Gill refused to give Mack any confiscation slips after half of his property was seized after the transfer and refused to give him legal materials needed for an upcoming court appearance which he grieved [#817028, 8/8/19] without success.

95. After filing grievances regarding missing property, Mack was given his property and 153 property sheets but there were several missing items and he was compensated for food that was also missing.

96. Plaintiff Mack was also denied access to the Electronic Mailing System and filed an additional grievance [#881386, 8/2/20] protesting this denial as further retaliation against him.

97. Plaintiff Mack had received a document that allowed him extra storage for legal materials for 12 months while at Albion but Forest refused to honor this privilege.

98. After filing this litigation, Mack and all others on RRL were transferred to SCI Phoenix in late 2020 or early 2021.

99. Mack was removed from the RRL in approximately July or August 2021 but remained in the RHU under AC status for another 6 months when he was transferred to SCI Somerset and put in the DEMO program

100. The DEMO program continues his prolonged isolation from general population with hour on and hour off release from cells from 8 AM to 9 PM and denies him needed programming such as law library access, congregate religious services, congregate recreation and contact visits.

101. Criminal charges were filed against Plaintiff Mack on August 8, 2019 in the Court of Common Pleas of Erie County CP-25-0002118-19 alleging violations of 18 Sec. 5123, 18 Sec. 903 [twice], 18 Sec. 5111 [twice], 18 Sec. 7512, 18 Sec. 7611, 35 Sec. 780-113 four subsections] i.e. contraband, conspiracy/bribery, criminal use of communications, unlawful, use of computer, manufacture, delivery, possession and sale of contraband.

102. The case has been listed for trial 20 times as of July 11, 2022 but Plaintiff Mack has yet to appear before a judge.

### Count I: Eighth Amendment – Conditions of Confinement

103. [Paragraphs 1-102 are incorporated by reference]-All Defendants have violated Mr. Mack's right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, by acts and omissions that have caused him to be subjected to conditions in the RHU that deprive him of the minimal civilized measure of life's necessities, including but not limited to physical health, mental health, environmental stimulation, social interaction, and basic human dignity.

104. All Defendants have committed these acts and omissions with deliberate indifference to the substantial risks of serious physical and psychological harm to Mr. Mack.

105. Defendants' acts and omissions have caused, and continue to cause, substantial physical and psychological harm to Mr. Mack, and have exposed him to a substantial risk of future harm, including permanent psychological damage and death by suicide.

106. Each Defendant had a duty to intervene to prevent Mr. Mack's ongoing confinement in unconstitutional conditions, had multiple reasonable opportunities to intervene, and failed to intervene.

### Count II: Fourteenth Amendment – Procedural Due Process

107. [Paragraphs 1-102 are incorporated by reference]- Defendant Wetzel and all other Defendants have violated Mr. Mack's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide Mr. Mack with the reasons for his continued placement in solitary confinement and/or on the Restricted Release List ("RRL"); failing to provide Mr. Mack a meaningful opportunity to be heard in order to challenge his continued placement in solitary confinement and/or the RRL; and failing to inform Mr. Mack what is required of him to be released from solitary confinement and/or the RRL.

### Count III- Fourteenth Amendment-Due Process

108. [Paragraphs 1-102 are incorporated by reference]- Defendants Floyd, Sissen, Adams and Clarke have violated Plaintiff Mack's right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by seizing his inmate account without notice or a meaningful opportunity to contest the seizure.

109. Defendants' acts and omissions have caused, and continue to cause, substantial financial and psychological harm to Mr. Mack.

### COUNT IV-First Amendment –Retaliation

110. [Paragraphs 1-102 are incorporated by Reference] All Defendants have violated Plaintiff Mack's' First Amendment Right to Access the Courts by retaliating against him for exercising his right to petition the government for redress of his grievances by maintaining silence and refusing to cooperate in their investigation.

### REQUESTED RELIEF

WHEREFORE, Plaintiff Sherman Mack respectfully requests that the Court grant the following relief:

A. A declaratory judgment that the Defendants are violating Mr. Mack's rights under the Eighth and Fourteenth Amendments to the United States Constitution,

B. An injunction requiring the Defendants to return Mr. Mack to general population

C. An award of compensatory damages against all Defendants in an amount to be determined by the finder of fact;

D. An award of punitive damages against all individual Defendants in an amount to be determined by the finder of fact;

E. Reasonable attorney's fees and costs; and

F. Such other relief the Court deems just and proper.


Respectfully submitted,

/s/ Angus R. Love
Angus R. Love
Attorney ID No. 22392
Law Offices of Angus Love
P.O. Box 521
Narberth, Pa. 19072
215-435-6345
*Attorney for Plaintiff*


DATE: August 9, 2022